IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JAMIE HOUSEKNECHT, | ) | |
|---|---|---|
| Plaintiff | ) ) ) ) | |
| vs. | ) ) ) | Civil Action No. 07-256<br>Judge Gary L. Lancaster/<br>Magistrate Judge Amy Reynolds Hay |
| CANDICE GETTINS, JACK LOUGHRY,<br>DAVID WAKEFIELD, SHARON BURKS,<br>D. FETTER, and JAMES TROUTMAN, | ) ) ) ) | |
| Defendants | ) | Dkt. Nos. [56] & [63] |

## REPORT AND RECOMMENDATION

### RECOMMENDATION

It is respectfully recommended that the DOC Defendants' motion for summary judgment, Dkt. [56], be granted. It is further recommended that James Troutman's Motion to Dismiss, Dkt. [63], be granted.

### REPORT

Jamie Houseknecht, ("Plaintiff"), is a state prisoner, who was convicted in the Court of Common Pleas of Berks County in 2004 for Attempted Involuntary Deviate Sexual Intercourse, Aggravated Indecent Assault, and Indecent Assault involving a victim less than 13 years old. He is now serving the sentences for those crimes. At the time of initiating this suit, and at the time of the relevant events which gave rise to this suit, Plaintiff was housed in SCI-Greensburg. Plaintiff is proceeding pro se and has filed a civil rights action.

In the operative complaint, Plaintiff named the following as defendants: Candace Gettins, Supervisor of the Mailroom at SCI-Greensburg; Jack Loughry, the Business Manager there; David Wakefield, the former Superintendent there; Dianne Fetter, the Inmate Account Supervisor there, and Sharon Burks, the Chief Grievance Officer for the Department of

Corrections ("DOC"). The court will refer to the foregoing defendants collectively as "the DOC defendants." In addition, Plaintiff named James Troutman, the Clerk of Courts for the Berks County Court of Common Pleas.

Plaintiff essentially makes two broad claims. The first claim is that Defendant Gettins is illegally tampering with Plaintiff's incoming and outgoing mail in violation of his constitutional rights. Plaintiff further claims that Defendants Loughry, Wakefield and Burks became aware of Gettins' alleged tampering via their roles in responding to Plaintiff's grievances against Gettins and these three refused to do anything about Defendant Gettins' alleged tampering.

The second broad claim is that Defendant Fetter is deducting monies from his inmate account in order to pay costs that she contends were imposed by the Berks County Court of Common Pleas Plaintiff but which Plaintiff contends he was never ordered by the Court to pay. Plaintiff sues Defendant Troutman for transmitting to DOC, forms that indicate Plaintiff was obliged to pay court costs when there was allegedly no order by the Berks County Court of Common Pleas imposing such court costs.

### A. Relevant Procedural History

The third amended complaint, Dkt. [36], is the operative complaint. After a period of discovery, the DOC defendants filed a motion for summary judgment, Dkt. [56], a brief in support, Dkt. 57], and a concise statement of material facts, Dkt. [58]. Plaintiff was ordered to respond to the summary judgment motion by a date certain, Dkt. [59]. Plaintiff sought, Dkt. [61], and was given, Dkt. [62], an extension of time in which to respond.

Thereafter, Defendant Troutman filed a motion to dismiss, Dkt. [63], pursuant to Fed.R.Civ.P. 12(b)(6), and a brief in support, Dkt. [64]. The Court ordered Plaintiff to respond. Again, Plaintiff sought, Dkt. [66], and was granted an extension of time in which to file his

response, Dkt. [67]. Shortly after being granted an extension of time in which to file his response to the motion to dismiss, Plaintiff sought leave to file yet another amended complaint. Dkt. [72]. That request was denied without prejudice to being re-filed with a complete proposed fourth amended complaint attached to the motion for leave to file. Dkt. [76]. Meanwhile Plaintiff filed on the same date: (1) a response to the DOC Defendants' Concise Statement of Material facts, Dkt. [75], and (2) a Notice to the Court, Dkt. [74]. In that notice, he indicated that he was unable to serve the attorney for Defendant Troutman with a copy of Plaintiff's response to DOC Defendants' concise statement and that he was unable to serve a memorandum in opposition to the the DOC defendants' motion for summary judgment "due to having insufficient funds and materials and being denied the same." Id. The Court notes that on the very same date he filed the notice, Plaintiff filed at Dkt. [72] his motion for leave to file a fourth amended complaint, consisting of 9 pages, at Dkt. [73] a one page motion for appointment of counsel and at Dkt. [75] his 10 page responsive concise statement of material facts. In response to Plaintiff's notice, the Court entered an order, relieving Plaintiff of his obligation to serve the Defendants's lawyers with pleadings but also warned Plaintiff that if he does not respond to the DOC Defendants' Motion for Summary Judgment, the Court may issue a report recommending dismissal for failure to prosecute or to enter summary judgment against Plaintiff in favor of the DOC Defendants. Dkt. [77]. The Court gave Plaintiff until July 7, 2008 in which to file a response to the DOC Defendants' summary judgment motion. Plaintiff failed to respond. He did, however, file two notices of a change of address.

### B. Standards of Review

#### 1. Motion to Dismiss

The standard of review for motions to dismiss has recently been explained by the Court of

3

Appeals as follows:

> In Twombly, an antitrust case, the Supreme Court rejected the language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that a district court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." In rejecting that language, the Supreme Court explained that the allegations of the complaint should "plausibly suggest[ ]" that the pleader is entitled to relief. In Phillips, a case brought under 42 U.S.C. § 1983, we held that Twombly's "plausibility" standard is not restricted to antitrust cases. 515 F.3d at 234. Although we commented that the exact boundaries of Twombly are not yet known, we read it to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (quoting Twombly, 127 S.Ct. at 1965). Put another way, "'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Id. (quoting Twombly, 127 S.Ct. at 1965). The complaint must state " 'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Id. (quoting Twombly, 127 S.Ct. at 1965). "That is to say, there must be some showing sufficient to justify moving the case beyond the pleading to the next stage of litigation." Id. at 234-35.

Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 173 n.7 (3d Cir. 2008). Furthermore, as the Court in Twombly explained: "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). With the plausibility standard in mind, we will review the complaint.

2. **Summary Judgment**

Summary Judgment is appropriate only where there are no genuine issues of material fact. Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, if the evidence, however, is "'merely colorable' or is 'not significantly probative,'" summary judgment may, nonetheless, be granted. Equimark Commercial Fin. Co. v. C.I.T. Fin. Serv.

4

Corp., 812 F.2d 141, 144 (3d Cir.1987) (quoting Anderson, 477 U.S. at 249-50).

In evaluating the evidence, the court must view the facts and the inferences to be drawn therefrom in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. The burden of establishing that no genuine issue of material fact exists rests with the movant. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. Josey v. John R. Hollingsworth Corp., 996 F.2d 632 (3d Cir.1993). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249.

### C. Discussion

#### 1. Motion to Dismiss by Defendant Troutman

With regard to Defendant Troutman, Plaintiff complains that

> 28. On or about December 13, 2004, Defendant Troutman forwarded Plaintiff's Commitment Authorization and related papers to the Pennsylvania Department of Corrections.
> 29. In these papers Defendant Troutman included a copy of the Docket Sheet which listed forty charges and a demand that they [i.e., DOC] assess from the Plaintiff's account until the costs are satisfied without an order from the sentencing or President Judge.

Dkt. [36] at 4.

Defendant Troutman has filed a motion to dismiss, raising several defenses.

First, Defendant Troutman points out that Plaintiff cannot challenge the financial aspects of his sentence via a Section 1983 civil suit. The Court agrees; for the general rule is that a state prisoner may not use Section 1983 civil rights suit to seek review of or to challenge any portion of his sentence, even the financial aspects of his sentence. See, e.g., Idahosa v. Despines, 275

Fed.Appx. 545, 546 (7th Cir. 2008)("What's more, § 1983 cannot be used to wage a collateral attack on a state court's judgment. Whether the ticket reflected discrimination is an issue that could have been raised as a defense. Idahosa is not in custody as a result of the fine (and this is not an action under 28 U.S.C. § 2254 ). Judgments rendered by state courts must be challenged through the state system; the losing litigant cannot move to federal court."); Sides v. City of Champaign, 496 F.3d 820, 824 (7th Cir. 2007). As the Court in Sides explained:

> But first, Sides's conviction poses a jurisdictional problem we must address. The federal statute allowing collateral review of state convictions, 28 U.S.C. § 2254 , applies only to persons "in custody," and Sides was sentenced to pay a fine but not to imprisonment or any other form of custody. He therefore is not entitled to review under § 2254 . Some passages in his complaint and brief suggest a belief that 42 U.S.C. § 1983 allows any form of review not authorized by § 2254, but the Supreme Court has never suggested that the "custody" requirement of § 2254 may be evaded so easily. Without the aid of § 2254, any effort to obtain review of a conviction-review that would imply a declaration of innocence, or even a return of the $500 fine-runs headlong into the *Rooker-Feldman* doctrine, which establishes that, except to the extent authorized by § 2254, only the Supreme Court of the United States may set aside a judgment entered by a state court. We are not authorized to afford relief "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 465 (2006).

Id. Accord Hanson v. Circuit Court of First Judicial Circuit of Illinois, 591 F.2d 404, 410 (7th Cir. 1979) ("We think that Congress intended that habeas corpus provide not only the exclusive federal remedy for those in custody, but also the exclusive federal remedy for all who seek to attack state court judgments of convictions."). This rule has been applied in our Circuit and was affirmed on appeal by the Court of Appeals. Hauptmann v. Wilentz, 570 F.Supp. 351, 400 (D.N.J. 1983)("lacking any express guidance from the Third Circuit, I adopt the view that 42 U.S.C. § 1983 cannot be used to attack a conviction collaterally."), aff'd, 770 F.2d 1070 (3d Cir. 1985) (Table).

Of course, Plaintiff's retort could be that the court costs are not part of his sentence

because the state judge did not order him to pay any costs. However, the rule that Section 1983 may not be used to review a state court criminal judgment is not rendered inapplicable simply because he is alleging that the court costs are not part of his sentence. The appropriate forum in which to raise this issue, in the first instance, is the state court wherein the court costs were imposed or not imposed as the case may be. It is for that state court to clarify its judgment. Federal courts may not review state court criminal judgments via a civil rights action even to determine whether they include a provision or not, federal courts may do so only via habeas.[1] This is not a habeas proceeding, nor, even if we were so inclined, would we to convert it to such, because it does not appear that Petitioner has exhausted his remedies in the state courts[2] and hence, the case, treated as a habeas petition, would be dismissed for failure to exhaust state court remedies.[3]

---

[1] Given the general rule that federal courts may not review State Court criminal judgments via Section 1983 civil suits, it may even be conceded that the State Court criminal judgment in Plaintiff's case is ambiguous as to the imposition of costs. However, such ambiguity does not take Plaintiff's case outside of the rule that federal courts may not review State Court criminal judgments to divine their meaning via Section 1983 actions.

[2] This court takes judicial notice of the state court dockets of Plaintiff's criminal case, which reveal that there is currently pending an appeal of the PCRA petition in the Superior Court with Plaintiff's brief due December 24, 2008. Those state court dockets are available at:

    http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=35263868

(Common Pleas docket) and at

    http://ujsportal.pacourts.us/DocketSheets/SuperiorCourtReport.aspx?docketNumber=1544 MDA 2008

(Superior Court docket).

[3] Because Plaintiff is still in custody due to the sentence which also apparently imposed the court costs, Plaintiff is not in the situation where he could not have used or, possibly, could not yet still use a habeas petition to bring the current claims. See, e.g., Guerrero v. Gates, 442 F.3d 697, 704-05 (9th Cir. 2006).

7

In the alternative, even if Plaintiff could challenge the allegedly wrongful acts of Defendant Troutman in transmitting to the DOC defendants the "Court commitment" form DC-300B[4] and/or the Common Pleas docket sheet, both of which indicate that Plaintiff is required to pay costs, Troutman points out that this alleged wrongdoing by him occurred in December 2004 as stated in the operative complaint. Dkt. [36] at 4, ¶ 28. Defendant Troutman points out that as to him, the complaint is time barred. The Court agrees.

The statute of limitations for 42 U.S.C. § 1983 in this case is two years. See Smith v. Holtz, 87 F.3d 108, 111 n.2 (3d Cir. 1996)(statute of limitations for § 1983 is the state statute of limitations for personal injury/tort actions, which, in Pennsylvania, is 42 Pa.C.S.A. § 5524 that establishes a 2 year statute of limitation for tort actions). The statute of limitations requires that a complaint be filed within its time limits from the time a cause of action accrues. See Sprint Communications Co., L.P. v. F.C.C., 76 F.3d 1221, 1226 (D.C. Cir. 1996).

Herein, the sole wrong complained of by Plaintiff concerning Troutman, i.e., his forwarding of the criminal docket and an instruction to deduct monies, occurred on or about December 13, 2004. Plaintiff did not "file"[5] the current civil rights action until, at the earliest, February 20, 2007, the date he signed the original complaint, which we note did not name Defendant Troutman; Plaintiff sought to add Troutman on November 11, 2007, when Plaintiff filed a motion for leave to amend his complaint to add, inter alia, Troutman as a defendant. Thus, it is clear from the face of the complaint that Plaintiff failed to commence his lawsuit

---

[4] Dkt. [56-2] at 8.

[5] Pursuant to the so-called prisoner mail-box rule, "[g]iven the difficulty in determining when a prisoner relinquishes control of the complaint to prison personnel, the date the plaintiff signed the original complaint is presumed to be the date plaintiff gave the complaint to prison officials to be mailed" and hence the date that the complaint was "filed." Mingues v. Nelson, No. 96 CV 5396, 2004 WL 324898, at *3 (S.D.N.Y. Feb. 20, 2004) (citing cases).

within the two year applicable statute of limitations.[6]  Accordingly, the complaint should be dismissed for failing to state a claim upon which relief can be granted given that the statute of limitations bars the suit.

2. **DOC Defendants' Motion for Summary Judgment**

Plaintiff makes essentially two claims against the DOC Defendants.  First, he claims that the DOC defendants, in the person of Mailroom Supervisor Gettins ,deliberately tampered with his incoming and outgoing mail, including a book which Plaintiff requested from PSI, called the "Prisoner's Guide to Survival," and the roughly 8 letters which he sent to PSI, of which they allegedly received only two.  PSI allegedly responded to both letters but Plaintiff states he only received one of the responses.  Further, Plaintiff contends that three of the remaining DOC Defendants, i.e., Loughry, Wakefield, and Burks all permitted this tampering because they gained knowledge of the ongoing violation of his First Amendment rights via their participation in the grievance system and did nothing.

To the extent that Plaintiff seeks to render Defendants Loughry, Wakefield and Burks liable, he premises their liability upon the roles they played in the DOC grievance process.  Such is insufficient as a matter of law.  The rule is that "[t]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." Rauso v. Vaughn, No. CIV. A. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000).  See also  Overholt v.

---

[6] This is so notwithstanding the doctrine of continuing violation because the tortious act which Defendant Troutman was alleged to have engaged in was a discrete act and not a continuing violation. See, e.g., Amadi v. FCI Fort Dix Health Services, 256 Fed.Appx. 477, 480 (3d Cir. 2007)("the 'continuing violation' doctrine did not save his otherwise untimely claims because the alleged March 1997 incident constituted a discrete and independently actionable act, thereby immediately triggering the limitations period. *See, e.g., O'Connor v. City of Newark*, 440 F.3d 125, 129 (3d Cir.2006) ('If the allegations in [plaintiff's] complaint are discrete, then each gave rise to a cause of action at the time it occurred. That cause of action persisted for two years and then lapsed.')"). See also National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-15 (2002).

Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir. 2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); Mitchell v. Keane, 974 F.Supp. 332, 343 (S.D.N.Y. 1997) ("it appears from the submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); Caldwell v. Hall, NO. CIV.A. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000)(The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); Orrs v. Corns, No. CIV.A. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct. 13, 1993)("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); Croom v. Wagner, Civ. A. No. 06-1431, 2006 WL 2619794, at *4 (E.D.Pa. Sept. 11, 2006)("Furthermore, neither the filing of a grievance nor an appeal of a grievance to Warden Wagner is sufficient to impose knowledge of any wrongdoing."); Jefferson v. Wolfe, NO. CIV A. 04-44, 2006 WL 1947721, at *17 (W.D.Pa. July 11, 2006)("These allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983. *See Watkins v. Horn*, 1997 WL 566080 at * 4 (E.D.Pa. 1997)(concurrence in an administrative appeal process is not sufficient to establish personal involvement)").

Even if it were otherwise and mere participation in the grievance procedure could render a prison official liable, Defendants Loughry, Wakefield and Burks, would still be entitled to summary judgment because there is lacking the required causation as to them for causing

Plaintiff to be deprived of his constitutional rights.

Regarding Section 1983 actions, in order to

> make out a claim under Section 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution and laws of the United States. The plaintiff must also establish that it was the acts of the defendant which caused the constitutional deprivation.

Mosley v. Yaletsko, 275 F.Supp.2d 608, 613 (E.D.Pa. 2003)(citations omitted).

The actions or inactions on the part of Defendants Loughry, Wakefield and Burks, with respect to denying Plaintiff's grievances/grievance appeals, cannot be said to have been the "cause" of Plaintiff's constitutional injuries since their actions concededly occurred only after the alleged interference with Plaintiff's incoming and outgoing mail, which is the subject of this lawsuit, had already occurred.[7] Without such causation there can be no liability. See, e.g., Troublefield v. City of Harrisburg, Bureau of Police, 789 F.Supp. 160, 166 (M.D. Pa. 1992)("*Brower v. Inyo County*, 489 U.S. 593 (1989) . . . requires that some nature of volitional act on the part of the state actor must cause the harm to plaintiff for a fourth amendment excessive force claim to sound."), *aff'd*, 980 F.2d 724 (3d Cir. 1992) (TABLE); Ricker v. Weston, 27 Fed.Appx. 113, 119 (3d Cir. 2002)("This decision not to discipline the officers does not amount to active involvement in appellees' injuries given that all of the injuries occurred

---

[7] The last occurrence of mail tampering that the operative complaint alleges concerning Plaintiff's outgoing mail was before October 16, 2006. Dkt. [36] at 3, ¶ 12. See also Dkt. [72-2] at 3, ¶ 12. (Plaintiff sent letters to PSI between March 28, 2006 and September 7, 2006). The last occurrence of mail tampering concerning incoming mail also occurred before October 16, 2006. See Dkt. [36] at 3, ¶¶ 12 - 13 (wherein Plaintiff alleges that of the two letters that PSI sent to Plaintiff in response, Plaintiff only received the second one). The first grievance that Plaintiff filed concerning the alleged mail tampering was not filed until October 16, 2006, id., at 3, ¶16, and Defendant Loughry did not respond to the first grievance until November 6, 2006. Id., ¶ 17. Defendants Wakefield and Burks only learned of the alleged tampering thereafter when Plaintiff filed his grievance appeals.

before the decision."); Moor v. Madison County Sheriff's Dept., 30 Fed.Appx. 417, 420 (6th Cir. 2002)("Timing is everything. Cochran did not learn any of these facts until Moor filed her complaint. Specifically, Cochran first learned of the incident on May 27, 1999, when he received a letter from Moor's attorney along with a courtesy copy of the Complaint. After receiving the complaint, Cochran investigated the incident by questioning Arthur, who denied any wrongdoing, and he reviewed the 911 calls for assistance from the Shell station. . . .In fact, Moor's facts reveal that Cochran did not know of the incident [at the time of its occurrence] and therefore could not have implicitly acquiesced in it."); Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 478 (7th Cir. 1997) ("Chief Robertson could not have undertaken any action to 'un-do' any alleged constitutional violation by Sergeant Krane."). Accordingly, summary judgment should be entered in favor of Defendants Loughry, Wakefield and Burks for either of the foregoing reasons (i.e., no causation or mere participation in the grievance process cannot make one liable).

As for Defendant Gettins, Plaintiff offers no evidence and only speculation that Defendant Gettins is tampering with Plaintiff's mail. All that Plaintiff points to is the fact that PSI did not receive five of the seven letters that he allegedly sent to PSI and that Plaintiff did not receive one of the two responses that PSI sent to him. The strongest claim that Plaintiff may have is that he has proof that the book he ordered from PSI was allegedly traced by the Post Office at the request of PSI, and the Post Office confirmed to PSI that the book was shipped out by PSI on March 6, 2006 and sometime thereafter was delivered to and received by SCI-Greensburg. See Dkt. [36] 3, ¶ 14. However, the only evidence Plaintiff offers of these "facts" is his sworn complaint which can serve as an affidavit.

The first problem with the sworn complaint which will be treated as an affidavit is that

the only factual basis for asserting that the book was delivered to SCI-Greensburg is that Plaintiff was told by a representative of PSI in a letter that the Post Office told that representative that the book was delivered. This is classic hearsay within hearsay and is not sufficient to create a material factual dispute. Beyah v. Coughlin, 789 F.2d 986, 990 (2d Cir. 1986)("Rule 56(e) provides that '[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' This requirement means that '[h]earsay testimony ... that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e)] affidavit.' 6 Moore's Federal Practice ¶ 56.22[1], at 56-1312 to 56-1316 (2d ed. 1985) (footnote omitted)"); Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001)("The Menkus affidavit appears inadequate under Rule 56(e). Not made on personal knowledge, it did not set forth facts that would be admissible in evidence. . . . Menkus instead relied on information from (unsworn) departmental personnel officers, and the source of these officers' information is unclear. Rather than set forth facts that would be admissible in evidence, the affidavit was instead based on inadmissible hearsay. Fed.R.Evid. 802."); Thomas v. International Business Machines, 48 F.3d 478, 485 (10th Cir.1995)("To be sure, the nonmoving party need not produce evidence 'in a *form* that would be admissible at trial,' but the content or substance of the evidence must be admissible. For example, hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.' Furthermore, 'generalized, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment.' (citations omitted).").

      Even if it were otherwise, at most, Plaintiff's sworn complaint establishes that all seven

of Plaintiff's outgoing letters to PSI were not received, rather, only two were and that of the two incoming letters from PSI, only one was received by Plaintiff and the book that Plaintiff wanted from PSI did not get to him. There is no evidence that Defendant Gettins was responsible in any way for this.

The DOC defendants in their motion for summary judgment adduce documentary evidence that although on February 13 or 14,[8] 2006, Plaintiff put in a request to the business office to send out a payment of $54.95 to PSI, the check was not made out until March 8, 2006 and presumably mailed out on that date or shortly thereafter. Accordingly, it would appear impossible that PSI could have shipped Plaintiff's requested book on March 6, 2006, (as represented by PSI in its letter to Plaintiff concerning the Post Office's alleged trace) because they had not yet received payment for such. Furthermore, the Defendants supplied a copy of the canceled check, showing that it was indeed cashed.[9] Accordingly, there is simply no evidence of tampering on the part of Defendant Gettins with Plaintiff's outgoing mail/request for the book from PSI publishing, as the evidence of record establishes that the check was undoubtedly sent out and cashed. Nor is there any evidence of Defendant Gettins tampering with Plaintiff's receipt of the book. There is no evidence that on the date that the book was allegedly received by SCI-Greensburg, Defendant Gettins was working or even, if working, that, as mailroom Supervisor, she saw the book or that she in any way interfered with the book. The evidence of record viewed in a light most favorable to Plaintiff would establish at most that the book was delivered

---

[8] Compare Dkt. [36] at 2, ¶ 10 (stating that "[o]n February 14, 2006, plaintiff mailed a check for $ 54.95 to PSI publishing for a legal book entitled 'Prisoners' Guide to Survival") with Dkt [72-2] at 2, ¶ 10 (stating that "[o]n February 13, 2006, Plaintiff requested Defendant Fetter to remove $54.95 from his personal inmate account and mail a check to PSI Publishing . . . .").

[9] The copies of the checks are for the most part illegible; to the extent that Defendants have more legible copies, they should be provided to the Court.

to SCI-Greensburg. What happened thereafter is purely speculative. No rational jury could find that Defendant Gettins tampered with the incoming book. This is true as well as to all of Plaintiff's incoming mail. There is no evidence that Defendant Gettins had any actual and personal involvement in Plaintiff's mail from PHS. Plaintiff's theory appears to be that because Defendant Gettins was the mailroom supervisor, she must have been involved in the tampering of Plaintiff's mail. This is simply conjecture which is insufficient to create a genuine issue of material fact. Accordingly, Defendant Gettins is entitled to summary judgment on this claim of tampering.

Plaintiff also complains that DOC Defendant Fetter is withdrawing funds from his account illegally because there is no court order directing that he pay court costs nor is there a court order authorizing the deduction of funds for payment of court costs. Plaintiff alleges that this denies him procedural due process.

The "rule of procedural due process is that official seizures can be constitutionally accomplished only with either 'notice and . . . opportunity for a hearing or other safeguard against mistaken' taking." Jonnet v. Dollar Savings Bank, 530 F.2d 1123, 1129 (3d Cir. 1976) (quoting North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 606 (1975)). Moreover, due process "'is flexible and calls for such procedural protections as the particular situation demands'" in order to "minimiz[e] the risk of error." Greenholtz v. Inmates of the Nebraska Penal and Corr. Complex, 442 U.S. 1, 12-13 (1979) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

Conducting a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty/property interest and, if so, the second question to be asked is whether the process afforded the complaining party

15

comported with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). Moreover, it is clear that Plaintiff has the burden of proving a violation of procedural due process. See, e.g., Smith v. City of Unadilla, 510 F.Supp.2d 1335, 1346 (M.D. Ga. 2007)("A plaintiff who asserts that a procedural due process violation has occurred, bears the initial burden of establishing that a protected property interest exists."); Castro Rivera v. Fagundo, 310 F.Supp.2d 428, 434 (D.Puerto Rico 2004)("It is not sufficient that a deprivation has occurred. Plaintiffs carry the burden of pointing to the lack of constitutionally sound proceedings at the state level. *Rumford*, 970 F.2d at 999. Plaintiffs must present evidence that the state does not have available review mechanisms comporting with minimum due process requirements."), aff'd. 129 Fed.Appx. 632 (1st Cir. 2005).

The Court of Appeals apparently has already decided that prisoners have a property interest in the monies placed in their inmate accounts. Hale v. Beard, 168 Fed.Appx. 532, 534 (3d Cir. 2006) ("We have repeatedly held that a prisoner has a protected property interest in the funds held in his inmate account.") (citing Higgins v. Beyer, 293 F.3d 683, 693 (3d Cir. 2002); Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 421 (3d Cir.2000)).

Hence the question to be determined is whether the procedures afforded Plaintiff comported with procedural due process requirements. In making this determination, we turn to Matthews v. Eldridge, 424 U.S. 319 (1976) the landmark case in the area of procedural due process, which created a balancing test. "Under that test, we must weigh the importance of the interest of which the plaintiff is being deprived, the extent, if any, to which the particular procedure contended for will reduce the risk of an erroneous deprivation, and the burden that would be imposed upon the government if that predeprivation process were required." Reich v. Beharry, 883 F.2d 239, 242 (3d Cir. 1989). See also Khodara Environmental, Inc. ex rel. Eagle

16

Environmental L.P. v. Beckman, 237 F.3d 186, 197 (3d Cir. 2001)("[I]dentification of the specific dictates of [procedural] due process requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."); Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 680 (3d Cir. 1991)("To establish a cause of action for a violation of procedural due process, a plaintiff in addition to proving that a person acting under color of state law deprived it of a protected property interest, must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process."), abrogated on other grounds by, United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003).

Here, Plaintiff has adduced no evidence in response to the summary judgment motion. Hence, he has failed to carry his burden of establishing a procedural due process violation.

Furthermore, for the reasons given in Buck v. Beard, 879 A.2d 157 (Pa. 2005)[10] and in Hale v. DOC, No. 3:CV-04-2704, 2006 WL 2927269 (M.D.Pa. Oct. 11, 2006), the Court concludes as a matter of law that the sentencing hearing before the Berks County Common Pleas Court provided Plaintiff with all of the procedural protections required before imposition of costs, restitution, etc. See, e.g., Mahers v. Halford, 76 F.3d 951, 955 (8th Cir. 1996)("In addition to the notice provided by [prison] policy IN-V-106, each inmate was granted the procedural

---

[10] In Hale v. Beard, the Third Circuit Court noted that "[w]hile we ultimately may conclude, as the Pennsylvania Supreme Court did [in Buck], that the existence of the statute and the proceedings attendant to sentencing provide sufficient notice and an opportunity to be heard to satisfy the requirements of due process, we are reluctant to address this issue without first hearing argument from the Commonwealth." Hale, 168 Fed.Appx. 534-35.

protections of a trial or plea proceeding to establish guilt, and a subsequent sentencing hearing to set punishment, including the amount of restitution."). Furthermore, together with the sentencing hearing, the Pennsylvania statute, commonly known as Act 84[11] and DOC policy DC-ADM 006, gave Plaintiff all the notice he was entitled to that should he be convicted of a crime, he would be subject to payment of any court imposed financial obligations flowing from his conviction and that the DOC would deduct such obligations from his inmate account. Davis v. Schwartz, No. CIV S-04-1390, 2007 WL 2481717, at *6 (E.D.Cal. Aug. 29, 2007)("Thus, plaintiff had statutory notice that anywhere from 20% to 50% of the deposits to his trust account would be deducted to satisfy the restitution fine[,]" and consequently the court entered summary judgment in favor of corrections officials against a prisoner, who claimed a procedural due process violation in the deduction of restitution payments from his account). Cf. Hardenberg v. Com. of Virginia, Dept. of Motor Vehicles, No. C-3-91-471, 1993 WL 1318606, at *5 (S.D.Ohio Sept. 10, 1993)("state action aimed at the collection of criminally-imposed fines operates as an integral part of the state criminal process"). Thus, Plaintiff was provided with notice and an opportunity to be heard prior to the deprivation of his property interest in the monies in his prisoner account. Plaintiff has utterly failed to show, as is his burden, that the procedures afforded by the Commonwealth of Pennsylvania are inadequate so as to prevent an erroneous deprivation of his property interest in his inmate account. See Hampton v. Ryan, NO. CV 03-1706, 2006 WL 3497780, at *9 (D.Ariz., Dec. 4, 2006)("Plaintiff has failed to show that the

---

[11] Act 84 was enacted on June 18, 1998 and became effective 120 days later, Buck, 879A.2d at 433 n.2, long before Plaintiff committed the crimes for which he was convicted and under which he is required to pay the court costs. The date of the crimes were January 4, 2004 as indicated by the Berks County Court of Common Pleas docket in Plaintiff's criminal case, of which this court takes judicial notice:

http://ujsportal.pacourts.us/DocketSheets/CPReport.aspx?matterID=35263868

process afforded to him is inadequate."), aff'd, 2008 WL 2959604 (9th Cir. Aug. 4, 2008). See also Mahers v. Halford, 76 F.3d 951 (8th Cir. 1996).

In the alternative, to the extent that Plaintiff seeks money damages against her, Defendant Fetter is entitled to qualified immunity because it would not have been clear to a reasonable official in the shoes of Defendant Fetter and/or any of the rest of the Defendants, that DOC was not authorized to deduct monies from Plaintiff's account without affording him some additional pre-deprivation notice (over and above the notice provided by Act 84 and at the sentencing hearing) and pre-deprivation hearing (over and above the sentencing hearing he had already) before monies were deducted from Plaintiff's account. See Saucier v. Katz, 533 U.S. 194, 201 (2001)("Courts must conduct a two step inquiry to determine the merits of a claim of qualified immunity: 1) whether the facts alleged show the officer's conduct violated a constitutional right and 2) whether the constitutional right was clearly established at the time of violation."). It makes no more sense to this Court that DOC would have to provide Plaintiff a pre-deprivation hearing before taking away his liberty by locking him up in a state prison, which had been ordered by the judgment of conviction, than DOC would have to provide him a pre-deprivation hearing before taking away his property by deducting money from his prison inmate account, which had effectively been ordered by the judgment of conviction when considered in conjunction with state law, i.e., Act 84.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

                          Respectfully submitted,

                          */s/ Amy Reynolds Hay*
                          United States Magistrate Judge

Dated: 24 November, 2008

cc:    The Honorable Gary L. Lancaster
      United States District Judge

      Jamie Houseknecht
      GB-3811
      S.C.I. at Greensburg
      R.D. #10, Box 10
      Greensburg, PA 15601

      All counsel of record by Notice of Electronic Filing